UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS SCHIENO,

                Plaintiff,

v.                                                    Case no. 5:15-CV-0335 (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>  Counsel for Plaintiff<br>126 North Salina Street, Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF GEN. COUNSEL–REGION II<br>  Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | PETER JEWETT, ESQ.<br>Assistant United States Attorney |

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Leslie Jo Greeson ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") seeking Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's cross-motion is denied.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born on October 27, 1982. He completed a high school education. His employment history consists of work as a sales route driver. Generally, his alleged disability consists of lumbar spondylolisthesis and shoulder pain. Plaintiff's alleged disability onset date is February 1, 2010.

   B.      Relevant Procedural History

On June 30, 2010, Plaintiff applied for DIB and SSI under Titles II and XVI. His application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 23, 2011, ALJ Milagros Farnes found Plaintiff not disabled following a hearing. (T. 97.) The Appeals Council vacated that decision and remanded the case for a new hearing. (T. 102-05.) On June 18, 2013, Plaintiff appeared before ALJ Elizabeth Koennecke for a second hearing. (T. 65.) On July 29, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 21.) On February 19, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-3.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-22.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date. (T. 16.) Second, the ALJ found that Plaintiff had one severe impairment: lumbar spondylolisthesis. (*Id.*) Third, the ALJ found

that Plaintiff's impairments do not meet or equal the severity of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (T. 17.) Fourth, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to (1) bilaterally lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, (2) sit three hours in an eight-hour day, (3) stand three hours in an eight-hour day, (4) walk to hours in an eight-hour day, and (5) occasionally lift completely overhead on the left side but otherwise bilaterally continuously reach, handle, finger, and feel. (*Id.*) Fifth, the ALJ found Plaintiff unable to perform past relevant work. (T. 20.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore found him not disabled. (T. 21-22.)

## II. THE PARTIES' BRIEFINGS ON THE ALJ'S DECISION

### A. Plaintiff's Arguments

Generally, Plaintiff makes three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred by summarily dismissing an opinion purportedly issued by a treating physician without attempting to contact the physician. (Dkt. No. 10 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not properly set forth her reasoning in finding that Plaintiff's impairments did not meet or medically equal Listing 1.04, and as a result the Court cannot determine whether it is supported by substantial evidence. (*Id.* at 3-6.) Third, and finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's shoulder impairment, and therefore the opinion of the Vocational Expert is not supported by substantial evidence. (*Id.* at 6-9.)

### B. Defendant's Arguments

Generally, Defendant makes three arguments in support of her cross-motion for judgment on the pleadings. First, Defendant argues that the ALJ had no duty to develop the record further, and that, if there were any gaps, it was Plaintiff's burden to fill them. (Dkt. No. 12 at 9-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's decision that Plaintiff's impairment did not meet or medically equal Listing 1.04 was supported by substantial evidence. (*Id.* at 5-6.) Third, and finally, Defendant argues that the ALJ's RFC determination and the Vocational Expert opinions derived therefrom were supported by substantial evidence. (*Id.* at 6-9.)

## III. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work. Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform. Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Analyzed Dr. Wulff's Opinions

After careful consideration, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 9-11.) To those reasons, the Court adds the following analysis.

The "treating physician rule," as it is known, "mandates that the medical opinion of the claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 119 (2d Cir. 1998).

6

If the opinion of the treating physician as to the nature and severity of the impairment is not "well-supported" by objective evidence, the obligation to give controlling weight to a treating physician's opinion does not apply. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

However, when controlling weight is not given to a treating physician's medical opinion, the ALJ must consider various "factors" to determine how much weight to give the opinion, such as the following: (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Furthermore, the ALJ must provide "good reasons" for not crediting the opinion of a plaintiff's treating physician. *See* 20 C.F.R. § 416.927(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 [2d Cir. 1998]).

Here, the record contains a document entitled "Physician's Medical Report," which contains opinions of functional limitations. (T. 810-11.) The document bears a signature which purports to be that of Warren Wulff, M.D., who is one of Plaintiff's treating physicians. (T. 811.) It also bears Dr. Wulff's license number in the signature block. (*Id.*) The ALJ gave this opinion "no weight" because, in her words, "[a]lthough that form was signed with Dr. Wulff's name, it was not signed by Dr. Wulff. An unknown individual signed Dr. Wulff's name . . . . Thus, the actual source of that opinion is unknown." (T. 18-19.)

As Plaintiff notes, however, there is no explanation in either the ALJ's decision or the record as to why the ALJ thought this document was not signed by Dr. Wulff. The Court cannot

7

find any evidence in the record calling its authenticity into question, and there is no indication that the ALJ ever contacted Dr. Wulff or Plaintiff's attorney to ascertain the authenticity of the document. Nor does Defendant address this issue in her memorandum of law. (Dkt. No. 12.)

Because there is no evidence supporting the ALJ's assertions with respect to the document's authenticity, the ALJ's opinion that the document is fake does not constitute the requisite "good reasons." While the ALJ may not have been required to assign the opinion controlling weight, the Court finds that the ALJ did not properly explain the weight given to the opinions contained in this document, and therefore remand is appropriate.

**B. Whether the ALJ Properly Set Forth Her Reasons for Finding that Plaintiff's Impairment Did Not Meet or Medically Equal Listing 1.04**

After careful consideration, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12 at 5-6.) To those reasons, the Court adds the following analysis.

The "Listings," which are set out at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, are descriptions of various physical and mental illnesses and abnormalities. *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990). Each Listing defines its impairment in terms of specific medical signs, symptoms, or laboratory test results. *Sullivan*, 493 U.S. at 530. In order for a claimant to prevail on a claim that his or her impairment meets the Listings, that claimant must prove that they exhibit *all* the required limitations. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Listing 1.04 provides as follows:

> Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:

8

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>    or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once ever 2 hours;
>    or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.00B2b provides as follows:

> The inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Initially, the Court notes that neither the record nor Plaintiff himself contend that there is a presence of Spinal arachnoiditis, and therefore there is no dispute that Plaintiff's limitations do not meet Listing 1.04(B). There is, however, a dispute as to the applicability of the other two paragraphs of Listing 1.04.

The ALJ found that Plaintiff's limitations did not meet or medically equal Listing 1.04, because "the record did not evidence motor loss, sensory loss, positive seated and supine straight-leg raising tests, or an inability to ambulate effectively." (T. 17.) Applying the ALJ's reasoning, a lack of motor loss, sensory loss, and both seated and supine positive straight-leg raising tests would preclude application Listing 1.04(A). A lack of "an inability to ambulate effectively," as defined in 1.00B2b, would preclude application of Listing 1.04(C).

9

Plaintiff argues that the ALJ "ignores key evidence that would lend credibility to the assertion that the claimant does meet the Listing at 1.04." (Dkt. No. 10 at 5 [Pl.'s Mem. of Law].) Specifically, Plaintiff first points out that an MRI indicates Spondylolisthesis with bilateral neural foraminal stenosis. (*Id.* at 6 [citing T. 654].) However, because the ALJ did not base her decision on the lack of a spinal impairment, evidence that an impairment exists does not contradict the ALJ's finding (The ALJ acknowledged that there was a spinal impairment, but did not find all the limitations required in Listing 1.04).

Second, Plaintiff points to two nearly-identical statements by Plaintiff's doctors, which he argues indicate the presence of positive straight leg testing, sensory loss, motor loss, and inability to ambulate effectively. (Dkt. No. 10 at 6 [Pl.'s Mem. of Law].) The first statement, which is located in treatment notes, states the following:

> [Plaintiff] looks terrible. He is gaunt and obviously in pain. He is walking stooped over with an antalgic gait leaning on a cane. With difficulty, he can get on and off the exam table where he has intact patella and ankle jerk reflexes and positive bilateral [straight leg raises]. He has painless ROM of both hips. He walks with a significant limp.

(T. 505.) The second statement to which Plaintiff cites states the following:

> [Plaintiff] has an altalgic type slow gait and uses an assist with a cane. He is able to get up onto the exam table with difficulty. He has reproducible lower lumbar pain and his lumbar flexibility is greatly reduced secondary to pain. He has positive straight leg raise on the left. His DTRs are +1 at the knee and ankle. His calf is soft, nontender bilaterally, and he appears to have intact sensation bilaterally as well.

(T. 511.) These statements, however, do not show that Plaintiff has all the limitations required to meet or equal Listing 1.04.

As discussed above, in order to meet Listing 1.04(A), Plaintiff must establish, among other things, motor loss (defined as "atrophy with associated muscle weakness or muscle

10

weakness") accompanied by sensory or reflex loss and, because Plaintiff's impairment involves the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, §1.04. Although the above-reference statements indicate positive straight leg raising tests, they do not indicate whether the tests were conducted while Plaintiff was sitting, supine, or both. Moreover, the statements do not indicate motor loss. Even if motor loss were indicated, Listing 1.04(A) also requires either reflex or sensory loss, and the statements Plaintiff cites do not support reflex or sensory loss. On the contrary, the statements appear to support the ALJ's findings. The first statement notes that Plaintiff's reflexes are intact, and the second statement indicates that Plaintiff's sensation is intact. Therefore, the evidence does not establish limitations meeting Listing 1.04(A).

Moreover, to meet Listing 1.04(C), Plaintiff must establish an inability to ambulate effectively, which is "defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning *of both upper extremities*." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§1.04, 1.00B2b. In other words, to constitute an inability to ambulate effectively, walking must involve the use of both arms, such as with a pair of canes or a walker. Both of these statements, and the record as a whole, reveal that Plaintiff uses only one cane. Therefore, the evidence does not establish limitations that meet Listing 1.04(C).

Finally, Plaintiff argues that, due to the brevity of the ALJ's explanation, this Court is unable to meaningfully review the ALJ's reasoning. (Dkt. No. 10 at 6.) The Court respectfully disagrees. While best practices may be to include a more-detailed statement of reasoning, the Court finds that the ALJ pointed to specific requirements of Listing 1.04 that were not met, and

that her reasoning was sufficiently specific to permit meaningful review. For these reasons, the Court finds that the ALJ's determination that Plaintiff's impairments to not meet Listing 1.04 is supported by substantial evidence.

### C. Whether the ALJ's RFC Determination and the Vocational Expert Opinions Are Supported by Substantial Evidence

The Court does not reach Plaintiff's final argument, because of its determination that the ALJ improperly assigned weight to Dr. Wulff's opinion above in Part IV.A. of this Decision and Order. Because the ALJ failed to provide and adequate explanation for the weight assigned to Dr. Wulff's opinion, and must do so on remand, the Court is unable to determine whether the RFC found by the ALJ is supported by Substantial Evidence. It is likewise impossible to determine whether the Vocational Expert properly considered all of Plaintiff's limitations in coming to his conclusions and presenting his testimony. Therefore, the Court does not reach the question of whether substantial evidence supports the ALJ's RFC determination or the opinions of the Vocational Expert.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's cross-motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the Commissioner's determination is **VACATED**; and it is further

**ORDERED** that the matter is **REMANDED** to the Commissioner of Social Security for further administrative proceedings consistent with this Order.

Dated: April 26, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge